UNITED STATES of America,
Plaintiff-Appellee,

v.

Elena Claire CANALES,
Defendant-Appellant.

No. 78–5079
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 19, 1979.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Roland E. Dahlin, II, Fed. Public Defender, Houston, Tex., Gustavo L. Acevedo, Asst. Fed. Public Defender, Laredo, Tex., Karen K. Brown, Asst. Fed. Public Defender, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., Anna E. Stool, George A. Kelt, Jr., Emilio Davila, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, GEE and FAY, Circuit Judges.

PER CURIAM:

The sole issue on this appeal concerns a supposedly improper comment by the prosecutor, made in closing argument, on defendant Canales' failure to make exculpatory statements after receiving *Miranda* warnings. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

Mrs. Canales was apprehended at the Sarita immigration check-point, located on the route from Brownsville to Corpus Christi, Texas, driving an automobile in which sixty-five marijuana bricks were concealed. Though the testimony is somewhat conflicting, it is clear that at some time shortly thereafter she received *Miranda* warnings, answered routine questions about her identity and the registration of the car, and either denied ownership of the drug or refused to answer further questions.

At trial, in response to questions by her own counsel, she testified that the first officer who arrested her gave her no warnings and that she denied ownership of the drug to him. In response to further questions by her attorney, she testified that the other officer did give her warnings and that she denied ownership to him also. She then went on to testify that the automobile had been in the possession of one Antonio Martinez for two days before the trip on which she was apprehended and that at the time of her arrest she was traveling to Corpus Christi partly to meet Martinez. She described her friendship with Martinez at some length, going into details about why she had been unable to locate him since her arrest, etc. which need not concern us here.

On cross, the prosecutor, without objection, tested her story about Martinez in various ways, including questions designed to show that she had not mentioned Martinez at her interviews with the arresting officers or, perhaps, to anyone else except her lawyer before she took the stand. In closing argument, the prosecutor suggested that Martinez was a phantom, introducing these remarks with a reference to "this gentleman by the name of Antonio Martinez, whom we have never heard of before." Before us, she contends that this argument, made in a case which turned largely on her credibility, constituted an improper comment on her failure to make exculpatory statements after a *Miranda* warning. We disagree and affirm.

Two observations lie at the core of the Supreme Court opinion in *Doyle*: that silence after *Miranda* warnings is "insolubly ambiguous"—since it may equally indicate guilt or merely that the arrestee has con-

cluded that it would be more prudent to await advice of counsel, as he has just been told he has a right to do—and that it is fundamentally unfair to permit the government first to advise the accused that he has a right to remain silent, that any utterance may be used against him, and then to use his silence in the same way.

The instant case presents, but with significant differences, the situation envisioned by Judge Thornberry's specially concurring opinion in *United States v. Mireles*,[1] where "a defendant who answered certain post-arrest questions, without offering an exculpatory story, is impeached at trial with his failure to have provided such an explanation after his arrest."

The first and most significant difference is that no complaint is made to us of the *testimony* about Mrs. Canales' silence/partial statement after her arrest. Nor was any made below; indeed, the matter was first brought up by the defense, and much of the testimony about it was in response to defense questioning. Second, it not only came in without objection, as noted, much if not most of this matter came in at the instance of the defense.

Defense testimony went so far, in fact, as to suggest reasons why Mrs. Canales could not locate or produce Martinez, anticipating an attack on her testimony about him as fictional. Thereafter precisely such an attack came, including questions—not objected to—squarely asking Mrs. Canales if she had mentioned Martinez to the interrogating officers. It is not too much to say, in these circumstances, that the defense tendered the issue of Martinez' reality and remained silent during a hammer-and-tongs attack on Mrs. Canales' credibility resulting from the tender. Having invited the exchange, and having offered no objection when it passed over into *Doyle* territory, the defense wisely does not complain to us of the receipt of this *evidence*.

In these circumstances, we are unable to find reversible error in the single observation of the prosecutor, itself not objected to, that Martinez was "this gentleman . . whom we have never heard of before." The comment was founded on evidence standing in the record, unattacked by objection or motion to strike below or assignment of error here, about an issue which the defense had itself raised and tendered. For all purposes of this appeal, then, it is conclusive that the evidence commented on was properly in the record. It may well be doubted whether any comment on such evidence could ever amount to reversible error; certainly this very mild one, solidly based in the testimony, does not.

AFFIRMED.

---

1. 570 F.2d 1287, 1293–4 (5th Cir. 1978).